UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRENDA DOSSETT,<br><br>     Plaintiff,<br><br>          v.<br><br>DR. KRISTA COX, in her individual capacity;<br>MIKE NATALIE, in his individual capacity;<br>LAUREN DEWLEN, in her individual and<br>official capacities;<br>SHANNON LEWIS-BLACK, in her<br>individual and official capacities;<br>WEXFORD OF INDIANA, LLC.,<br><br>     Defendants. | No. 2:21-cv-209<br><br><br><br><br><br>JURY TRIAL DEMANDED |

**Complaint for Damages and Declaratory and Injunctive Relief**

**Introduction**

1.      Brenda Dossett is currently incarcerated at Rockville Correctional Facility. She has a host of medical problems that have left her with an external pouching system to catch her stool following a colostomy. The pouch collects her stool and is held in place with an adhesive and a barrier to prevent her skin from coming into contact with waste, as such contact will cause the skin to become painful and irritated and contributes to the pouch not being able to be held in place. The pouch needs to be regularly replaced, and Ms. Dossett must be able to clean herself and replace the barrier and adhesive. The defendants

[1]

have implemented a policy that denies her the ability to regularly clean herself, obtain a new pouch, and obtain new supplies. This has led to Ms. Dossett's pouch continually leaking, which causes her skin around the stoma, the hole in her intestines, to break down, which is extremely painful.

2. The actions and inactions of the defendants represent deliberate indifference to Ms. Dossett's serious medical needs in violation of the Eighth Amendment to the United States Constitution and constitute torts under Indiana law. Appropriate injunctive and declaratory relief should be issued against defendants Dewlen and Lewis-Black, in their official capacities, and damages should be awarded against all the defendants.

**Jurisdiction, venue, and cause of action**

3. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

5. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

6. This Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367 in that these claims are so related to plaintiff's federal claim as to form part of the same case or controversy under Article III of the United States Constitution.

**Parties**

7. Brenda Dossett is an adult resident of the State of Indiana who is currently incarcerated at the Rockville Correctional Facility, an Indiana Department of Correction

("DOC") facility in Rockville, Indiana.

8. Wexford of Indiana, LLC is a domestic limited liability company with its principal office in Indianapolis, Indiana.

9. Dr. Krista Cox is an adult person formerly employed as a physician at the Rockville Correctional Facility. She is sued in her individual capacity.

10. Mike Natalie is an adult person formerly employed as the health care administrator at the Rockville Correctional Facility. He is sued in his individual capacity.

11. Lauren Dewlen is an adult person currently employed as the health care administrator at the Rockville Correctional Facility. She is sued in her individual and official capacities.

12. Shannon Lewis-Black is an adult person currently employed as the director of nursing at the Rockville Correctional Facility. She is sued in her individual and official capacities.

**Facts**

13. Because of medical issues, Ms. Dossett had a colostomy in 2009. Although it was reversed, she had to have another one in 2010 and it has not been reversed.

14. A colostomy is a surgical procedure where an external opening, called a stoma, is made in the large intestine.

15. Once the stoma is made, the waste contents of the large intestine will flow out of the stoma.

16. The waste is caught in a disposable pouch. In addition to the pouch, a person with a stoma will use: barrier wipes that makes the skin tacky, and a pouch which is affixed around the stoma with stoma paste and barrier rings. Then the pouch is taped to the skin to better affix it. A person may also use stomahesive powder, which is used to absorb moisture from any broken skin around the stoma to provide better protection for the skin. Tape remover pads will also be used to remove any of the adhesive left before a new pouch is used.

17. The seal that is created must be a tight one as leakage from the stoma is obviously not hygienic and will severely irritate the skin.

18. The person with a colostomy pouch must regularly change the pouch and other items to prevent leakage. She must also regularly clean her skin around the stoma to prevent irritation.

19. Ms. Dossett entered the DOC in 2015 after being convicted of crimes.

20. Since April of 2017, the DOC has contracted with Wexford of Indiana, LLC ("Wexford") to provide, among other services, health care to DOC prisoners.

21. Upon entering the DOC, Ms. Dossett was placed at the Indiana Women's Prison where she remained until she was sent to her current placement at Rockville Correctional Facility in April of 2019.

22. While at the Indiana Women's Prison Ms. Dossett was given 30-day supplies for her colostomy each month so that she was able to change the pouch and other items each

day.

23. This enabled her to shower each day, as when she showers the items holding the pouch in place and protecting her skin lose their seal.

24. When Ms. Dossett was transferred to Rockville Correctional Facility, Dr. Kristina Cox became her physician and remained her physician until Dr. Cox left the facility in mid-2020.

25. Dr. Cox was employed by Wexford.

26. Mike Natalie, an employee of Wexford, was the Health Care Administrator from the time Ms. Dossett transferred to Rockville Correctional Facility until Mr. Natalie left his position in early 2021.

27. At the time that Ms. Dossett came to Rockville Correctional Facility, Shannon Lewis-Black was a nursing supervisor and Lauren Dewlen was Director of Nursing.

28. When Mr. Natalie left the institution, Shannon Lewis-Black assumed her current position as Director of Nursing and Lauren Dewlen assumed her current position as Health Care Administrator.

29. Following Ms. Dossett's transfer to Rockville Correctional Facility she experienced frequent occasions when her colostomy pouch would leak, causing waste to discharge onto her body. In addition to causing her to smell, to which other prisoners reacted negatively, this also caused her skin to become burnt and painfully irritated.

30. As her skin became irritated, the items designed to adhere the pouch close to her

body ceased to be effective, as her skin was not smooth, causing more leakage.

31. Showering became a problem as if the pouch is not tightly affixed to her body the water of the shower will cause it to become loose. And, as her skin became more and more irritated the bag would not remain tight on her body.

32. Dr. Cox reacted to this by repeatedly accusing Ms. Dossett of purposely ripping her pouch. This began in approximately May of 2019 and continued until Dr. Cox left the institution in mid-2020.

33. Ms. Dewlen and Ms. Lewis-Black made similar accusations.

34. In June of 2019 and again in the latter part of 2019, Dr. Cox took all of Ms. Dossett's clothes from her as punishment after accusing her of purposely ripping her pouch so it would leak.

35. Ms. Dossett never purposely caused her colostomy pouch or the seal to fail and never intentionally caused the pouch to leak.

36. Nevertheless, Dr. Cox, with the approval of Mr. Natalie, instituted a policy that removed Ms. Dossett's colostomy supplies from her and that allowed her to change her colostomy pouch only on Mondays and Fridays.

37. The supplies were kept in the nursing office and Ms. Dossett would have obtain permission to go to the nursing office to get the new supplies.

38. The only way that she was able to attempt to obtain supplies, other than Monday or Friday, was to go to request the supplies from nursing staff.

39. On a number of occasions, she requested supplies other than on Monday or Friday because her bag was leaking, through no fault of her own, and was causing her pain, skin burning and irritation, and the smell of bodily waste.

40. However, she was refused the supplies, either directly by Ms. Dewlen or Ms. Lewis-Black or at their direction.

41. Visits to the nursing office had to be approved and Ms. Dossett's movement had to be authorized. Frequently when she asked correctional staff to contact the nursing office to gain permission to try to get supplies on a day other than Monday or Friday, she was refused because of the policy implemented and enforced by the defendants.

42. Ms. Lewis-Black and Ms. Dewlen enforced the above Monday/Friday policy and continued to deny Ms. Dossett necessary supplies through September 2020.

43. When the Monday/Friday policy was in effect Ms. Dossett was unable to shower on the units where she lived, as if she did, the colostomy bag would become unsealed, and she would have no way of getting new supplies.

44. As a result, the policy created and implemented by the defendants resulted in Ms. Dossett not being able to shower except on Mondays and Fridays in the shower in the infirmary next to the nursing office immediately after she received her new colostomy supplies.

45. The skin around her stoma is not smooth, and it is difficult to maintain the seal that is necessary to protect her skin and to keep the contents of her intestine from spilling

out.

46. The Monday/Friday schedule for changing her pouch and providing her supplies was never sufficient to allow the seal to be maintained.

47. The contents of the pouch therefore frequently leaked.

48. This was tremendously non-hygienic and caused continual, and painful, burns and irritation of her skin.

49. It also caused hostility from other prisoners who were forced to confront the sight and smell of the waste.

50. On occasion Ms. Dossett was instructed by Dr. Cox and nursing staff to tape a trash bag to the stoma area to try, unsuccessfully, to catch the waste as the pouch would not stick and as she did not have new supplies.

51. With each spill of waste, her skin became more and more irritated, making it more difficult for the pouch to adhere to the stoma.

52. She frequently asked for additional supplies to supplement the new pouches that she received on Monday and Friday and was frequently refused because of the policy created and implemented by defendants.

53. At times nursing staff would just tape the pouch to her irritated skin, but it would not successfully hold the pouch in place.

54. At various times she was told by nursing staff that she should not eat so as not to generate waste. Therefore, sometimes she would not eat for 3-4 days.

55. On one occasion she stood for more than 12 hours to try to keep the pouch in place.

56. The lack of regular showers has contributed to continued irritation of her skin.

57. This caused her a great deal of pain and discomfort and is a direct result of the Monday/Friday restriction created and implement by the defendants.

58. The policy created and implemented by the individual defendants denied her necessary supplies and the ability to clean herself, and was tremendously unsanitary and caused her pain and injury.

59. From September through November 2020, Ms. Dossett was hospitalized following a surgical procedure.

60. When Ms. Dossett returned to Rockville, she was housed in the infirmary through the end of March 2021.

61. While in the infirmary, her surgical dressings were changed every other day and when the dressing was changed she was, at times, able to get a new pouch and other colostomy supplies.

62. However, even while in the infirmary, there were times that colostomy supplies were not available.

63. Ms. Dossett is currently scheduled to return to the infirmary every other day to have the dressings changed on her post-surgical wound.

64. However, nursing staff sometimes does not initiate the call that would allow Ms. Dossett to go to the infirmary, and when that happens, she is not permitted to go.

65. She has waited as long as three days in between visits to the infirmary.

66. During those visits, she is sometimes, though not always, given supplies that would allow her to change her pouch or otherwise care for her ostomy. At least twice a week, Ms. Dossett is not given all of the supplies that would allow her to change out her pouch.

67. During those visits, she is sometimes, though not always, permitted to shower, if the medical staff indicates that they have time to allow her to do so.

68. At times, Ms. Dossett must wait three days to get new ostomy supplies.

69. She continues to experience leakage and irritation of her skin, as these infrequent changes are not sufficient to allow her to properly care for her ostomy.

70. Ms. Dossett has not been informed how often she will be provided with supplies or permitted to change her pouch when she no longer requires wound care.

71. Specifically, she believes that the previous Monday/Friday policy remains in effect and will be applied once she no longer requires wound care.

72. The policy created and implemented by the individual defendants, and the continued failure to allow Ms. Dossett to have necessary supplies for her colostomy, represent deliberate indifference to Ms. Dossett's serious medical needs.

73. The policy created and implemented by the individual defendants, and the failure to allow Ms. Dossett to have necessary supplies for her colostomy, represent a failure to comply with the applicable standard of care, negligence, and other torts which caused

harm to Ms. Dossett.

74. Ms. Dossett has exhausted all available administrative remedies.

75. At all times, the individual defendants acted within the course and scope of their employment at Wexford.

76. Ms. Dossett is suffering irreparable harm from the actions and inactions of Ms. Dewlen and Ms. Lewis-Black for which there is no adequate remedy at law.

77. At all times defendants acted and failed to act under color of state law.

**Jury trial demand**

78. Plaintiff demands a jury trial on all claims so triable.

**Claim for relief**

79. The policies created and implemented by the individual defendants that denied and continue to deny Ms. Dossett necessary supplies, subject her to non-hygienic conditions, and cause her pain and injury, have violated and continue to violate the Eighth Amendment in that the individual defendants have been deliberately indifferent to Ms. Dossett's serious needs.

80. Defendants Natalie, Dewlen, Lewis-Black, and Wexford of Indiana, LLC, are liable for their failures to comply with the applicable standard of care, negligence, and all other torts.

81. Wexford of Indiana, LLC is liable for the torts of defendants Natalie, Dewlen, and Lewis-Black as noted above.

WHEREFORE, plaintiff requests that this Court

a.   accept jurisdiction of this case and set it for hearing at the earliest opportunity.

b.   declare that defendants violated plaintiff's Eighth Amendment rights for the reasons noted above.

c.   enter a preliminary injunction, later to be made permanent, requiring that Ms. Dewlen and Ms. Lewis-Black take all steps necessary so that Ms. Dossett receives all supplies necessary to care for her colostomy and so that Ms. Dossett can shower as necessary.

d.   award Ms. Dossett her damages against all defendants after trial and a jury verdict.

e.   award Ms. Dossett her costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

f.   award all other proper relief.

          Stevie J. Pactor
          Kenneth J. Falk
          ACLU of Indiana
          1031 E. Washington St.
          Indianapolis, IN 46202
          317/635-4059
          fax: 317/635-4105
          spactor@aclu-in.org
          kfalk@aclu-in.org

          Attorneys for Plaintiff